CAGNEY v. WATTLES.

1. MANDAMUS—JUSTICES OF THE PEACE — FRAUDULENT ENTRY OF JUDGMENT.

Where a justice of the peace, in an action of replevin wherein plaintiff failed to appear, delayed the entry of judgment until the time for appeal had expired, and then entered judgment for plaintiff, falsely reciting his due appearance, defendant was entitled to *mandamus* to compel the entry of a judgment of nonsuit.

2. SAME — EXPENSE OF PROCEEDINGS—ACTION AGAINST JUSTICE—DAMAGES.

Where defendant in replevin was obliged to resort to *mandamus* to secure the entry by a justice of the peace of a judgment of nonsuit to which he was entitled, he may show the expense of the *mandamus* proceedings in an action against the justice to recover damages for his misconduct in the premises

Error to Kalamazoo; Buck, J.	Submitted June 8, 1899.	Decided October 3, 1899.

Case by Edward Cagney against I. Nat Wattles, a justice of the peace, for official misconduct. From a judgment for plaintiff, on verdict directed by the court, for less than the amount claimed, he brings error.	Reversed.

*William A. Luby*, for appellant.

*Howard, Roos & Howard*, for appellee.

LONG, J.	This cause was commenced in justice's court. The plaintiff claimed damages in his declaration for wrongful injuries committed by defendant in issuing a writ of replevin on May 8, 1897, wherein Nettie Newton was plaintiff and Edward Cagney (the plaintiff here) was defendant, without first having taken a bond from Nettie Newton, and without having the surety justify his respon-

sibility in writing on the bond, as required by law, and for having entered false records and false statements upon his docket. The cause was tried before the justice, who rendered a judgment in favor of plaintiff for $14, and $6.88 costs. The plaintiff appealed the cause to the circuit court, where, upon a trial before a jury, the plaintiff recovered verdict and judgment for $15 damages, without costs. Plaintiff brings error.

Plaintiff called defendant as a witness. He testified, substantially, that he issued the writ of replevin, but that, before issuing it, the plaintiff in that case (Nettie Newton) filed with him a replevin bond in the penal sum of $100, with Mr. Holmes as surety; that, to the best of his recollection, Holmes justified in writing on the back of the bond, but that he would not say positively that Holmes did so justify or that he justified at all; that the writ was returnable on May 15, 1897, at 10 o'clock in the forenoon; that, on the return day, Nettie Newton, the plaintiff, did not appear, but that Cagney, the defendant, did appear, by Mr. Luby, his attorney, who inquired as to the bond, and demanded that the same be produced, but that witness informed him that it was mislaid, and could not be found; that Luby waited until the expiration of one hour, and, the plaintiff not appearing, he demanded a nonsuit; that this was refused by witness, but that, a week or 10 days after the return day of the writ, he entered judgment in favor of the plaintiff against Cagney, the defendant. Witness had his docket in court, and produced it. It shows two pages of entry of judgment. The first judgment entered, and marked "Exhibit A," recites:

"May 8. On filing affidavit of Nettie Newton, taken on oath and in writing by and before me, together with approved bond, I issued writ of replevin, returnable before me at my office in the city of Kalamazoo the 15th day of May, 1897, at 10 o'clock in the forenoon.

"May 15. Writ returned executed on the 8th day of May, A. D. 1897, by seizing the goods and chattels therein specified, and delivering the same to the plaintiff therein named, at the same time serving personally on said de-

fendant, at the city of Kalamazoo, a certified copy of said writ, by Theodore Merrill, constable in and for said county. His fees, $1.10.

"Ten o'clock a. m. cause called. Plaintiff present in court. Defendant did not appear. After waiting one hour, trial proceeded with. Plaintiff declared orally in an action of replevin for the wrongful detention of certain goods and chattels described in said writ of replevin by defendant, to plaintiff's damages of $100 or under. Nettie Newton sworn, and testified as a witness for and on the part of plaintiff; and, after considering her evidence, I rendered judgment in favor of plaintiff, and against defendant, for the restoration of goods described in the writ of replevin, and, further, that she recover her costs of suit, taxed at $3.10.                         I. NAT WATTLES.

"Dated, May 15, 1897."

It appears that on July 17, 1897, the plaintiff here made an application to the circuit court for Kalamazoo county for a *mandamus* to compel the justice to cancel this judgment of record, and to enter upon his docket the facts that, on the return day of the writ of replevin, the plaintiff did not appear; that the defendant did appear by attorney, who requested that the bond be produced, but that the same was not produced, and that, after the expiration of one hour, the defendant's attorney insisted that a nonsuit be entered; and that he further enter upon his docket a judgment of nonsuit, with costs to be taxed in favor of defendant, and also an entry that defendant have return of the goods and chattels replevied, unless the defendant should waive a return; that defendant recover damages sustained by reason of the detention of such goods and chattels, said damages to be assessed according to law; and that the justice render accessible, if within his power to do so, the bond filed in the cause. This petition was sworn to, and the facts were recited therein. The circuit court directed the issue of *mandamus* in accordance with the prayer of the petition. The justice, in accordance with this mandate, canceled the former judgment, and entered a new judgment reciting the facts as directed, entering a judgment in favor of defendant, and assessing

the value of the goods taken at $10 and no damages for detention; defendant, however, to recover his costs of suit. The justice recited further in the judgment entry:

"It is not in my power to render accessible the bond filed in the cause, for the reason that it is not in my files in my office. Said bond was in the sum of $100, and signed by A. J. Holmes, and ran to Edward Cagney, and said surety justified in writing on the back of said bond, and was, to the best of my recollection, sworn to before me, and said bond was given and justified to before issuing of writ of replevin."

This entry was made November 16, 1897.

While the first judgment purports to have been entered on May 15, 1897, the justice, while on the stand as a witness, testified that it was not entered on that day, but a week or 10 days thereafter; that he kept a minute book, upon which he entered his record, and then entered his judgment at his leisure; that plaintiff appeared in court, and was sworn, but that he was unable to state at what hour she appeared. He further testified that the statement in the first judgment entry that the defendant did not appear was false; that the attorney for the defendant did appear, and that, at the expiration of one hour, the plaintiff not appearing, the defendant's attorney asked to have a judgment of nonsuit entered. The justice, however, testified that in the afternoon of May 15, 1897,—the day the first judgment purports to have been entered,— Nettie Newton came into his back office; that Mr. Cagney came in the front office; that he then told Cagney he should enter judgment for Nettie Newton; that he knew it was his duty to enter judgment of nonsuit for defendant, and, knowing such was his duty, he decided, after talking with both parties, to enter the judgment in favor of Nettie Newton. He further testified that, when he told Cagney he should enter judgment for Nettie Newton, he thought, from the way Cagney acted, that he waived the question.

The plaintiff was called as a witness in his own behalf,

and testified that the goods replevied consisted of a trunk
containing a large amount of wearing apparel and other
things, of the value of $15 or $20.   He was then asked to
state the amount of expense he was put to in the *man-
damus* proceeding.    This was objected to, on the ground
that the same was irrelevant, immaterial, and incompetent.
This objection was sustained, to which ruling of the court
counsel for plaintiff excepted.    Plaintiff was then asked
to state what, if any, attorney's fees he had paid, or obli-
gated himself to pay, in his effort to get the defendant to
expunge the false entries made on his docket, and to have
the entries made on the docket in accordance with the
facts.    This was objected to, and objection sustained.
He was then asked to state what efforts his attorney had
made to induce the justice to correct his docket.    This
was objected to, and objection sustained.    Plaintiff then
offered in evidence the files and records in the *mandamus*
proceedings.    Under objection of defendant's counsel, the
court refused to receive them in evidence.    The plaintiff
then testified that he was not in the office of the justice on
May 15, 1897, nor for 10 days thereafter, and that the
justice never told him he intended to render judgment in
favor of Nettie Newton, and that he never saw her in the
justice's office at any time.    The court instructed the jury
that they should find for the plaintiff, and assess his dam-
ages at what they found the goods worth.    They returned a
verdict for $15.    The court was asked to award plaintiff
his costs in the judgment.    This was refused.

Plaintiff's counsel contends in his brief that the court
erred in excluding the testimony above referred to, and in
refusing to allow the plaintiff his costs of the trial in the
circuit court.    It is contended by counsel for defendant
that the court properly refused to receive the evidence in
relation to these *mandamus* proceedings, for the reason
that the proceedings were wholly void, and that, there-
fore, plaintiff had no right to recover from defendant the
costs he incurred therein.    Counsel cite, in support of this
contention, the case of *O'Brien* v. *Tallman*, 36 Mich. 13.

It is probable that the court below viewed that case as controlling in the present, as he held that the writ of *mandamus* had been improvidently issued. That case differed materially from the present. In that case there was no question but that the justice acted upon the facts as they were presented in the case. The parties both appeared. The court had jurisdiction of both the parties, and, on the entry of judgment, the aggrieved party had his remedy, either by general or special appeal or by *certiorari*, and *mandamus* was not the proper remedy to review the action. In the present case, it was shown in the *mandamus* proceeding that a false judgment had been entered; that the plaintiff did not appear in the case, and, at the expiration of one hour, the defendant's counsel, who was present, asked a judgment of nonsuit. The justice had no jurisdiction to render judgment in her favor. Subdivision 2, § 6938, 2 How. Stat. Her failure to appear worked a discontinuance of the suit at once. *Redman* v. *White*, 25 Mich. 523; *Brady* v. *Taber*, 29 Mich. 199. It then became the duty of the justice to enter judgment of nonsuit, with costs, and for a return of the property, or, if return was waived, to assess the damages. 2 How. Stat. § 8346; *Redman* v. *White*, *supra*. In case the defendant is entitled to judgment of nonsuit, the justice must enter the judgment at once. He cannot even take the four days allowed in certain cases. 2 How. Stat. § 6945. This want of jurisdiction would have appeared had the justice truthfully stated the facts on his docket. This he did not do, and the affidavits in the *mandamus* proceeding tend to show that no entry of judgment was made in fact for nearly a month after the return day of the writ. The justice then made the entry of the first judgment, falsely reciting the appearance of the plaintiff, and that the defendant did not appear. When the fact of the entry of this false judgment became known to plaintiff, the time for appeal had long since expired, as well as the time for taking out a writ of *certiorari*. Upon the confession of the justice, this judg

ment was false, and the only requirement of the *mandamus* was that a judgment be entered according to the facts,—that is, a judgment of nonsuit,—for which the statute in express terms provides. We think the court below was in error in rejecting the testimony as to the costs of the *mandamus* proceedings. By the defendant's own fraudulent acts, the plaintiff was made this expense, and should have been allowed to show the amount.

The question of costs in appeal cases is largely in the discretion of the court. That question is not of much consequence in the present case, as on a new trial the judgment in favor of plaintiff may be largely increased, and the court below may then determine the question.

The judgment below is reversed, and a new trial awarded.

GRANT, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., took no part in the decision.